M. L. Cottingham, et al. * v. Commissioner. Cottingham v. Commissioner
Docket Nos. 46721, 46722, 56880, 56881.
United States Tax Court
T.C. Memo 1956-186; 1956 Tax Ct. Memo LEXIS 106; 15 T.C.M. (CCH) 987; T.C.M. (RIA) 56186; August 14, 1956
James F. Graham, Esq., and Ernest B. Graham, Esq, for the petitioners. John C. Calhoun, *107 Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The Commissioner determined the following deficiencies in income tax: Docket
Additions
No.
Year
Deficiency
to tax
46721
1947
$23,081.11
46722
1947
10,389.96
1948
13,211.75
Section 294
(d)(2)
56880
1951
2,501.42
$252.50
Section 294
(d)(1)(A)
648.75
1952
1,450.48
1953
862.90
56881
1951
2,699.33 The issues for decision are as follows: (1) Whether M. L. Cottingham received certain amounts as a taxable dividend in the approximate amount of $36,038.22 from M. L. Cottingham, Inc. during the taxable year 1947. (2) Whether petitioner M. L. Cottingham, Inc. is entitled to deductions for rentals as claimed or is to be limited as determined by the Commissioner to the amounts of $3,200, $5,900 and $5,900 for the period April 1, 1947 through December 31, 1947, and the years 1948 and 1951, respectively. (3) Whether petitioner M. L. Cottingham, Inc. properly claimed deductions of $4,828.89 for the year 1951 as business expense. (4) Whether petitioner M. L. Cottingham, Inc. is entitled to a claimed *108 deduction of $2,060.09 for the year 1951 as legal and audit expenses. (5) Whether the Commissioner properly added to the income of petitioner M. L. Cottingham the amounts of $5,668.89, $3,348.47 and $2,270.76 in the years 1951, 1952 and 1953 as dividends and cash received from M. L. Cottingham, Inc. and are, accordingly, excludable as taxable income from the income of M. L. Cottingham and Mae Jean Cottingham for the years 1951, 1952 and 1953, respectively. (6) Whether the Commissioner properly determined additions to tax pursuant to sections 294(d)(1)(A) and 294(d)(2) for the year 1951 against petitioners M. L. and Mae Jean Cottingham. An issue involving surtax under section 102(a) with respect to M. L. Cottingham, Inc. for the taxable years April 1, 1947 through December 31, 1947 and 1948 has been conceded by the Commissioner and can be reflected in a Rule k0 computation. General Findings of Fact M. L. Cottingham (hereafter called petitioner) prior to April 1, 1947 operated a Ford automobile agency at Zanesville, Ohio, as a sole proprietorship. M. L. Cottingham, Inc. (hereafter called the corporation) is a corporation organized under the laws of Ohio on April 1, 1947. *109 Petitioner filed an individual income tax return for the calendar year 1947 with the collector of internal revenue for the eleventh district of Ohio. Petitioner and his wife Mae Jean Cottingham filed a joint return for the calendar year 1951 with the collector of internal revenue for the same district and joint returns for the calendar years 1952 and 1953 with the director of internal revenue at Columbus, Ohio. The corporation filed its returns on an accrual basis with the collector of internal revenue at Columbus, Ohio for 1947 and with the director of internal revenue at Columbus, Ohio for the other taxable years. On April 1, 1947, petitioner transferred all the assets of his sole proprietorship to the corporation in return for 100 shares of its common stock (all the outstanding stock) and a promissory note in the amount of $38,513.62. The amount of the outstanding note was arrived at by including income tax owed by petitioner for 1946 and 1947 in the respective amounts of $18,525.77 and $3,225.41; $9,110 owed by petitioner to Dr. L. A. Thomas, and an additional income tax liability of $4,383.60 for the year 1947 which was finally determined by the Commissioner in 1950. This *110 latter amount was not definitely determined in 1947 at the time of incorporation. The discrepancy in the total of these figures, $35,294.78 and the amount of the note, $38,513.62, is unexplained. Issue No. 1 Findings of Fact As of the close of 1947 the corporation had earned surplus and undivided profits amounting to $36,340.72. In the notice of deficiency the Commissioner determined that petitioner received $36,038.22 as dividends in the year 1947 from the corporation under the provisions of section 115, Internal Revenue Code of 1939. Opinion As framed by the pleadings and argument it is difficult to get at the heart of this issue. The Commissioner determined that petitioner received $36,038.22 as dividends from the corporation in 1947. Petitioner does not deny that he received at least that amount from the corporation but in his petition alleges that the "indebtedness" (inferentially represented by the note described in our findings of fact) "was a liability of the duly formed corporation," and, piecing this allegation together with petitioner's argument, we take it that his position is that the amounts received from the corporation represented "repayment" of the loan *111 and not taxable dividends. (See page 10 of petitioner's brief and page 4 of petitioner's reply brief.) On the other hand, the Commissioner, on brief, contends that the amount of the note represents a contribution to capital and, arguing that the corporation was "thinly" capitalized, goes on to say that the note was a bookkeeping transaction only and should be construed as not being a bona fide indebtedness. We think the contentions of both parties are somewhat beside the point. The Commissioner's determination carries with it a presumption of correctness and the burden of proving its error rests on petitioner. Sufficient evidence to carry this burden is not to be found in the record. In the first place, as noted above, petitioner tacitly admits that he received withdrawals from the corporation in the taxable year approximately equal to the amounts determined by the Commissioner. He argues that these withdrawals were in fact repayments of the note given by the corporation to him. The trouble with this argument is that the evidence does not support it. The note is in the record. It is dated April 1, 1947 and was payable on or before two years after date. It bore interest at 5 per *112 cent. According to the testimony of petitioner and his accountant, and the allegations of the petition, its amount was determined not by the value of assets transferred by petitioner to the corporation over and above the common stock issued, or by money or other property loaned to the corporation, but by the amount of personal liabilities of petitioner's own which the corporation assumed. Even assuming the note was a bona fide debt owed petitioner by the corporation, there is no evidence establishing that the amounts withdrawn from the corporation in 1947 were applied in repayment of the note. So far as we can ascertain from examination of the instrument there are no endorsements thereon evidencing payments made in 1947. Petitioner himself testified the note was paid "during the following year or two years after that * * * I would construe that August 13, 1952, is when the final payment was paid." Such testimony certainly does not prove that the withdrawals of some $34,000 from the corporation in 1947 were intended to be or in fact were repayments of the note, no matter whether the amount of the note represented a "bona fide indebtedness" or a "contribution to capital." We can only *113 conclude that petitioner has not demonstrated error in the Commissioner's determination and the decision on this issue must go against petitioner. Issue No. 2 Findings of Fact On June 1, 1945, petitioner leased certain business property from the Stevens estate for a period of ten years at a required rental of $400 per month. Part of the leased premises were used by petitioner's automobile business. He had the privilege of purchasing the leased property for $45,000. The property was later purchased by petitioner's wife for the option price. Petitioner was the executor of the Stevens estate. For eight months in 1947 the corporation paid petitioner's wife $600 per month for that part of the leased premises which it occupied and for most of 1948, after taking over some additional space in the leased building paid her $700 per month. In its returns for the taxable period April 1, 1947 through December 31, 1947, and for the years 1948 and 1951, the corporation claimed deductions for rent paid to Mae Jean Cottingham in the amounts of $4,800, $8,300 and $8,400, respectively. The Commissioner disallowed $1,600, $2,400 and $2,500 of the claimed amounts in the respective periods, explaining *114 that the amounts he allowed were determined to be reasonable under section 23(a). Opinion Section 23(a)(1) allows a deduction for rentals or other payments "required to be made as a condition to the continued use or possession, for purposes of the trade or business * * *." The Commissioner, on brief, does not rely so much on whether the rentals in question were or were not unreasonable. He contends rather that the rentals were excessive, and were not "required" within the statutory meaning, arguing that before the incorporation of the business, petitioner held a ten-year lease on the premises at an annual rental of $400 per month with an option to purchase for $45,000; that instead of exercising the option himself, his wife purchased the property and upon the rearrangement of affairs to do business in the corporate form, 100 per cent owned by petitioner, the corporation paid an increased rental to his wife. This increase, the Commissioner disallowed. Here again the burden is upon the corporation to show error in the Commissioner's action. We cannot see that this has been done. No justification appears in the record for increasing the rental beyond that which petitioner had been *115 paying before incorporation. Whatever dealing there was with respect to rents took place between petitioner's wholly owned corporation and his wife. As a matter of fact, there is no evidence of any bargaining whatsoever. Certainly the increase in rent was not the result of an arm's-length transaction. There is no evidence showing that the corporation was "required" to pay the increased rental for continued use of the premises. Nor is there any record that a new lease, oral or written was entered into between petitioner's wife and the corporation. For all that is in the record, it appears that the business could have continued to occupy the premises at a rental no higher than the $400 per month provided in the lease between petitioner and the Stevens estate. Why a higher rental was paid to petitioner's wife is not proven. In this respect petitioner testified simply that the amount claimed as a deduction was paid because "it was charged at that price" and "it was exceptionally reasonable in proportion to rentals around this piece of property." In view of testimony that petitioner had been renting what presumably was the same property under a ten-year lease for $400 per month just prior *116 to incorporation and the absence of anything showing that the increased rentals paid by the corporation were the result of arm's-length bargaining, coupled with lack of evidence of any improvements to the premises or any increase in the value thereof which might justify an increase in rent, we can only conclude that the corporation has not shown error in the Commissioner's determination on the rental issue and that determination is sustained. Issues No. 3 and No. 4 Findings of Fact The corporation incurred legal and auditing expenses amounting to $4,008.85 in the year 1951. The corporation continued a Christmas bonus plan which petitioner had had in effect while operating the business as a sole proprietorship. During 1951 the corporation incurred expenses of $1,495 which it paid to its employees. In its income tax return for 1951 the corporation claimed deductions of $4,008.85 for "Legal and auditing" and $11,833.81 for "Traveling and Promotional." Of these claimed deductions the Commissioner disallowed $2,060.09 of the legal and auditing expenses, explaining that it represented a personal expense of petitioner, and he also disallowed $4,828.89 with the following explanation: *117 "It has been determined that $1495.00 in bonuses paid to employees at Christmas were not added to their stipulated salaries and are therefore considered gifts and not deductible under Section 39.23(a)-8 of Reg. 118. It has also been determined that Mr. M. L. Cottingham withdrew cash in the amount of $2314.65 which was unsubstantiated as to purpose, and is therefore disallowed. It has been determined that Mr. M. L. Cottingham received certain items at his home for entertainment purposes. As the business character of these expenses was not substantiated they have been disallowed in the amount of $1019.24." Opinion With reference to the disallowance of the amount of $1,495 in bonuses paid to employees of the corporation at Christmas, we think the disallowance by the Commissioner was in error. There is apparently no dispute as to the amount of this item or the fact that it was paid. There is credible testimony of record that the payment was part of a cash bonus plan for employees, and while there is no point-blank denial that the amount was intended as a gift (no such question was asked), we think the reasonable inference is that the bonus plan was intended to be part of the employees' *118 compensation and as such the amounts paid thereunder are deductible expenses of the corporation. With reference to the item for legal and auditing fees which was disallowed we have the unequivocal testimony of the attorney to whom the amount of $2,060.09 was paid, that it was for services rendered the corporation and not for services to petitioner. This testimony is not controverted and we conclude the amount of $2,060.09 should have been allowed as a deduction. So far as the other disallowed items are concerned we have only the statements of counsel, unconcealed in leading questions, backed up by very general testimony of the petitioner himself that these expenditures were "for the promotion of the business" and for "a meeting each month of my service department * * * I purchased a dinner for them at this meeting, and had refreshments * * *. Others was probably some champagne * * *" etc. Of course the statements of counsel are not evidence. No records, vouchers, books or receipts were introduced to substantiate or corroborate the petitioner's testimony. The bulk of the claimed amounts for traveling and promotional expenditures were allowed by the Commissioner, and other than the *119 items for employees' bonuses and legal expenses referred to above which are specifically identified in the pleadings and record and which we hold should be allowed, we can find no error in the Commissioner's disallowance. On this record there is no room for an additional allowance under the rule of Cohan v. Commissioner, 39 Fed. (2d) 540. Issue No. 5 Findings of Fact For 1951 the Commissioner determined that petitioner had received unreported dividends from the corporation of $3,333.89 consisting of cash withdrawn from the corporation and personal expenses paid. The Commissioner also charged petitioner with the amount of $2,335 withdrawn as travel advances which was includible in gross income under section 22(a) of the Internal Revenue Code. For 1952 the Commissioner added $3,348.47 to petitioner's income by determining that petitioner had withdrawn cash from the corporation in the amount of $975; that the corporation had paid personal expenses of petitioner amounting to $495.97; and that petitioner had withdrawn $1,877.50 as travel advances which was includible in gross income under section 22(a) of the Internal Revenue Code *120 . For 1953 similar additions to petitioner's income were determined consisting of the following amounts: Cash withdrawn
$ 482.06
Personal expenses paid
469.45
Travel advances
1,319.25
$2,270.76
Opinion Here again petitioner must carry the burden of proving error in the Commissioner's determinations, and again we must conclude that he has failed. His contention is that the amounts with which he is charged as additional income were all spent as travel and other deductible expenses of the corporation. No corporate records whatever were produced, despite the fact that when asked whether he had any itemization of his travel advances, his answer was in the affirmative, and his further testimony that such itemization would appear in the ledger sheets which were saved from an alleged fire. The sole testimony as to the purposes for which the money dithdrawn from the corporation was spent is that of petitioner himself. The following is typical of questions and answers on issue No. 5 and also issues No. 3 and 4: Q. "For the year 1952, the Government has charged you personally with the sum of $1,877.50, which appears on the corporate records as money paid to *121 you as travel advances. Will you tell the Court of what that item consists?" A. "The same as I asked you for the other year previous to that, trips to Cleveland, to Canton, to Columbus, and so forth." Q. "Was any of that sum used by you for your personal expenses?" A. "It was not." Q. "And in the year 1953, Mr. Cottingham, the Government has charged you with the sum of $1,319.25 as money paid to you by the corporation, although the same appeared on the records of the corporation as travel advances. Will you tell the Court what that item consisted of?" A. "My answer is the same as the previous year." Q. "Was any of that money used - " A. "No." Q. "By you personally?" A. "No." As before noted no corporate records were produced and no witness testified as to what they contained. Whether or not the corporate records showed what counsel in his questions state they showed is not established by any competent evidence. Petitioner's own testimony falls far short of establishing error in the Commissioner's determinations and we uphold those determinations for the years here involved. Issue No. 6 The Commissioner determined additions to tax against petitioners M.L. and *122 Mae Jean Cottingham for the year 1951 in the amounts of $252.50 and $648.75 under sections 294(d)(2) and 294(d)(1)(A), respectively. Inasmuch as no evidence was introduced at the hearing bearing on this issue the Commissioner's determination is sustained. Decisions will be entered under Rule 50. Footnotes
*. Proceedings of the following petitioners are consolidated herewith: M. L. Cottingham, Inc., Docket No. 46722; M. L. and Mae Jean Cottingham, Docket No. 56880; M. L. Cottingham, Inc., Docket No. 56881.↩